UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YOEL WEISSHAUS,<br><br>　　　　　　　　　*Plaintiff,*<br><br>　　- against -<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and THOMAS P. JOHNSON,<br><br>　　　　　　　　　*Defendants.* | Index:　21-2062<br><br>**AMENDED COMPLAINT** |

Plaintiff Yoel Weisshaus by his counsel Levi Huebner & Associates PC pleads against Defendants, Port Authority Of New York And New Jersey, and Thomas P. Johnson, and states:

### JURISDICTIONAL and PARTIES ALLEGATIONS

1. At all times material to this lawsuit, Plaintiff, Yoel Weisshaus ("Plaintiff") was domiciled in New Jersey.

2. At all times material to this lawsuit, Port Authority Of New York And New Jersey, ("Port Authority" or "Defendants") operate in the State of New York under the color of state law as a government agency.

3. At all times material to this lawsuit, Thomas P. Johnson ("Johnson") was employed in the Staten Island division of the Port Authority Police.

4. At all times material to this lawsuit, Port Authority is a resident of Kings County.

5. The acts necessary or precedent to bringing this lawsuit originated in New York.

6. On June 7, 2019, Plaintiff filed a combined notice of tort claim - request for disclosure - and hold letter.

7. This Court has jurisdiction.

**RELEVANT FACTS**

8. At all times material to this lawsuit, Johnson represented to be a sworn police officer with the Port Authority Police.

9. On January 16, 2019, at about 11:15 a.m., Johnson executed a traffic stop on Plaintiff while in Staten Island.

10. Johnson fabricated a false charge accusing Plaintiff of driving "before the Bayonne Bridge" 55 MPH in a 25 MPH construction zone ("fabricated charge").

11. The fabricated charge listing a violation in a construction zone means that Plaintiff faced a twofold penalty for ordinary speeding, such as a penalty of five (5) points being instantly ten (10) points.

12. Johnson issued the fabricated charge in the form of a complaint and summons.

13. The fabricated charge occurred and was issued while the parties were physically located in Staten Island, NY.

14. The fabricated charge was issued in the form of a complaint-summons No. 091-C-227717 to be answered in the Bayonne Municipal Court ("Bayonne Court").

15. All complaints and summonses in the Bayonne Court involving traffic violations are handled by a Prosecutor of the State of New Jersey.

16. On April 16, 2019, the proceeding against Plaintiff in the Bayonne Court was terminated in Plaintiff's favor.

**FIRST CLAIM FOR RELIEF**

17. Plaintiff incorporates herein all the allegations stated in paragraphs from 1 to 16, for relief against Johnson under 42 U.S.C. § 1983 and *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3rd Cir. 2014).

18. At all relevant times, Johnson was as a police officer operating under the color of law.

19. Johnson issued a fabricated charge in the form of a complaint and summons.

20. At all relevant times, the complaint and summons charged Plaintiff with violating N.J.S.A. 39:4-98.

21. At all relevant times, in the State of New Jersey a "complaint and the summons" of a traffic violation is "prima facie evidence" of "the time and place" of the alleged traffic violation under N.J.S.A. 39:4-98. *State v. Morgan*, 393 N.J. Super. 411, 416, 923 A.2d 359, 362 (App. Div. 2007).

22. At all relevant times, Municipal Courts in the State of New Jersey treat a "complaint and summons" as prima facie evidence of "the time and place" of a violation under N.J.S.A. 39:4-98.

23. At all relevant times, the fabricated charge issued to Plaintiff was capable of influencing a jury against Plaintiff, with the "complaint and summons" being prima facie evidence of "the time and place" of a violation under N.J.S.A. 39:4-98.

24. Defendants used the fabricated charge to create prima facie evidence under the color of law to deprive Plaintiff from the right to be free from fabricated evidence.

25. Johnson forwarded the fabricated charge to the Prosecutor of Bayonne Court.

26. There were four appearances where Plaintiff was forced to appear at the Bayonne Court to defend the fabricated charge. The dates are February 4, 2019, at 9:00 a.m.; March 5, 2019, at 4:00 p.m.; March 19, 2019, at 4:00 p.m.; and April 16, 2019 at 4:00 p.m.

27. Plaintiff was forced to take time off from work to appear before the Bayonne Municipal Court for each of the four appearances.

28. Each time that Plaintiff was forced to take time off from work he suffered an economic loss that could not be replaced by Plaintiff or his employer. In particular, Plaintiff's work involved receiving job assignment(s) to shelter human remains at a given funeral home. Plaintiff would be on call 24 hours a day and each job assignment would occur sporadically based on the time of death and the funeral schedule. Each time that Plaintiff was forced to take time off from work meant that Plaintiff lost the job assignment. Each job assignment at times constituted the entire income Plaintiff had for that week.

29. Each job assignment lost in the weeks of February 4, 2019, March 5, 2019, March 19, 2019, and April 16, 2019, was the economic loss of Plaintiff's income for that week.

30. In addition, Plaintiff bore the cost of retaining counsel to defend the fabricated charge.

31. On the one hand, Johnson deliberately caused these actual damages through the fabricated charged issued to Plaintiff. On the other hand, Plaintiff could not avoid defending the fabricated charge. Otherwise, Plaintiff would have faced a bench warrant under NJ R MUN CT R. 7:2-2(h). In addition, a default or conviction of the fabricated charge could lead to Plaintiff's imprisonment under N.J.S.A. § 39:4-104 and to double fines under N.J.S.A. 39:4-203.5.

32. At all relevant times, the right to be free from fabricated evidence was clearly established.

33. At all relevant times, Plaintiff was following the speed limit and there was no probable cause to prosecute him.

34. As a direct result, Plaintiff incurred actual damages.

## SECOND CLAIM FOR RELIEF

35. Plaintiff incorporates herein all the allegations stated in paragraphs from 1 to 34 for a claim against the Port Authority and Johnson for money damages.

36. The Port Authority operates as a municipality within New Jersey Municipal Court system.

37. In the New Jersey Municipal Court system, a prosecutor represents each municipality.

38. The systemwide practice in the New Jersey Municipal Court is setup by design to dissuade a defendant from challenging traffic citations, hinder the pleading of defenses, and trick the settling of citations.

39. First, each citation is treated as prima facie evidence of the time and place of a violation, pursuant to N.J.S.A. 39:4-98, regardless of the merits or lack thereof, placing an uphill battle for a defendant to overcome the so-called prima facie evidence. Second, this treatment automatically shifts the burden of proof from the prosecution to a defendant and assures that the majority defendants settle with the prosecutor to a reduced traffic fine to a lesser charge of a non-point violation, which usually involve a higher fine with surcharges in lieu of points on the driver's license. Third, a municipality issuing a traffic citation receives around 50% of the revenue a traffic fine generates and the fact that the system is designed to discourage challenging traffic citations and encourage municipalities incentivize the issuing of summonses.

40. This system allows municipalities a free rein of paying lip service to due process given the obstacles to overcome the prima facie burden of time and place of a violation. This is so systematic, that the police officer does not even have to appear in court except in the rare case a defendant mounts a full defense. In other words, the fact that the system is designed to discourage challenging traffic citations and the generating of revenues through traffic citations, there is an incentive for municipalities to incentivize its police officers to issue traffic citations.

41. Consequently, utilizing the aforementioned system, the Port Authority demands that their police officers increase in issuing traffic citations. The expectation is simple, 99% of those affected will plea away for a lesser charge of a non-point violation, the Port Authority gets its lion's share, and rarely ever would an officer need to substantiate the basis for a traffic citation, knowing that a citation itself is considered prima facie evidence of the time and place of a traffic violation.

42. The Port Authority has a custom of pressuring its police officer to raise revenues through traffic citations in the hopes of reaping from the revenues the system generates.

43. The pattern for the quotas at the Port Authority are nothing new. (*Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333, at *7 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom.*, 445 F.3d 158 (2d Cir. 2006), *Holden v. Port Auth. of New York & New Jersey*, 521 F. Supp. 3d 415, 429 (S.D.N.Y. 2021) (similar incidents as *Martinez*, having undercover officers operate under a quota to stalk individuals using the public bathrooms and falsely framing those individuals with charges of lewdness). The practice of quotas is so widespread in the New Jersey Municipal Courts that bipartisan legislation was recently enacted to end that practice of quotas P.L.2021, c.249.

44. Since about 2014, the Port Authority assigned Johnson to target motorists around the Bayonne Bridge.

45. The basis for the assignment was that the Bayonne Bridge was under construction.

46. Pursuant to N.J. Stat. Ann. § 39:4-203.5(a) "An area of highway construction or repair shall consist of that area between the first traffic control device or sign informing motor vehicle operators of their approaching highway construction or repair and the last traffic control device or sign indicating all restrictions are removed and normal motor vehicle operations may resume."

47. Pursuant to N.J. Stat. Ann. § 39:4-203.5(c) an area of highway construction or repair must display signs to notify drivers approaching areas of highway construction or repair, or designated safe corridor areas, that the fines are doubled for motor vehicle offenses in those area.

48. At all relevant times, the fabricated charge accused Plaintiff of speeding 55 miles per hour in a 25 miles per hour zone "440 SB [Southbound] before Bridge," referring to the Bayonne Bridge.

49. The fabricated charge accused Plaintiff of doing 30 miles over the limit in a construction zone.

50. If not for the purported construction zone, the speed limit before the Bayonne Bridge would otherwise range from 50 miles per hour.

51. At all relevant times, the Port Authority did not display any signs or devices informing motorists that they are entering a Safe Corridor where the fines are doubled for motor vehicle offenses.

52. At all relevant times, the Port Authority did not afford motorists any advance notice informing motorists that they are entering a construction zone.

53. In particular, the Port Authority deliberately has a custom of not informing motorists that they are entering a construction zone, because under N.J. Stat. Ann. § 39:4-203.5(d) it is not a defense to receiving a double fine the omission of "a sign notifying drivers who are approaching highway construction or repair areas, or designated safe corridor areas, that fines are doubled for motor vehicle offenses in those areas was not posted, improperly posted, wrongfully removed or stolen, or that signs or devices were not placed in compliance with the most current Manual on Uniform Traffic Control Devices for Streets and Highways."

54. In order to fraudulently entrap innocent drivers into receiving a summons, the Port Authority did not post warnings notifying motorists that they are entering a construction zone around the Bayonne Bridge.

55. The reason the Port Authority did not post any signs to motorists that they are entering a construction zone with double fines is to fraudulently induce motorists to continue with its regular speed in the hope of profiteering from the increased chances of issuing fines.

56. In particular, Johnson was driven to create the fabricated charge to satisfy the pressure by the Port Authority in issuing summonses.

57. In Plaintiff's case, the Port Authority's custom of pressuring drove Johnson to create the fabricated charge against Plaintiff, albeit Plaintiff was pulled over in Staten Island, the traffic citation was made returnable to Bayonne Municipal Court under the expectation that Plaintiff would plead away the traffic fine to a non-point charge. As opposed to Staten Island, NY where the charging officer must appear before an administrative judge at the DMV and prove the charges by clear and convincing evidence.

58. Johnson created the fabricated charge that Plaintiff was speeding in a construction zone by the direction of the Port Authority to meet the pressure in targeting motorists in the area of the Bayonne Bridge.

59. In this case, the Port Authority has a custom of pressuring its officers with issuing traffic citations, given the system that most defendants opt in negotiating with the prosecutor, drove Johnson to create the fabricated charge, expecting to easily to meet the pressure without having to answer for the fabricated charge.

60. The Port Authority maintained the fabricated charge against Plaintiff despite its knowledge of having no evidence to substantiate the fabricated charge.

61. The Port Authority maintained the fabricated charge against Plaintiff that it was speeding in a construction zone despite its knowledge of that there were no warnings marking the location of the charge as being a construction zone.

62. The Port Authority maintained the fabricated charge against Plaintiff in the hopes of profiteering from the revenues it collects through traffic violations.

63. On April 16, 2019, the Bayonne Court entered an order dismissing the fabricated charge.

64. As a direct result of the fabricated charge, Plaintiff incurred the damages described in paragraphs 26 through 32.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully asks the Court to enter judgment in Plaintiff's favor and award money damages, punitive damages, and attorney fees with legal costs.

Plaintiff demands Jury Trial.

Dated: Brooklyn, New York
October 28, 2022

    Respectfully submitted,

    Levi Huebner & Associates PC

By: /s/ Levi Huebner

488 Empire Boulevard, Suite 100
Brooklyn, NY 11225
Tell: (212) 354-5555

*Attorneys for Plaintiff*